UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

THE ANNUITY, WELFARE AND
APPRENTICESHIP SKILL
IMPROVEMENT & SAFETY FUNDS OF
THE INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 15,
15A, 15C & 15D, AFL-CIO, by their
Trustees James T. Callahan, Thomas A.
Callahan, Michael Salgo, and William
Tyson; CENTRAL PENSION FUND OF
THE INTERNATIONAL UNION OF
OPERATING ENGINEERS, by its Chief
Executive Officer Joseph Shelton; and
INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 15,
15A, 15C & 15D, AFL-CIO by its
President and Business Manager Thomas
A. Callahan,

                Plaintiffs,

          -against-

MIRMAX ENGINEERING, P.C.,

                Defendant.

---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22-CV-2870 (FB) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiffs the Annuity, Welfare, and Apprenticeship, Skill Improvement and

Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C &

15D, AFL-CIO, by their Trustees James T. Callahan, Thomas A. Callahan, Michael Salgo,

and William Tyson; the Central Pension Fund of the International Union of Operating

Engineers, by its Chief Executive Officer Joseph Shelton; and the International Union of

Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO, by its President and Business

Manager Thomas A. Callahan, initiated this action against Defendant Mirmax

Engineering, P.C. on May 17, 2022. (Complaint ("Compl."), ECF No. 1.) Plaintiffs seek

delinquent benefit contributions and related relief under Sections 502(a)(3) and 515 of

the Employee Retirement Income Security Act ("ERISA"), *see* 29 U.S.C. §§ 1132(a)(3),

1145, and Section 301(a) of the Labor Management Relations Act ("LMRA"), *see* 29

U.S.C. § 185. (*See* Compl., ECF No 1.)

Currently before the Court is Plaintiffs' motion for default judgment, which the

Honorable Frederic Block referred to the undersigned Magistrate Judge for a report and

recommendation. (Mot. for Default J., ECF No. 8; June 30, 2022 ECF Order.) For the

reasons set forth below, the Court respectfully recommends granting Plaintiffs' motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  Factual Background

The International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-

CIO ("the Union") is a labor organization as defined in Section 2 of the LMRA. (Compl.,

ECF No. 1, ¶ 13.) The Union collectively bargains with employers, including Defendant,

on behalf of Union employees "engaged in the land surveying industry." (City

Surveyors & Consulting Engineers Agreement ("Local 15/Mirmax CBA"), ECF No. 12-

2, Art. I § 1.)

The Union and Defendant entered into a collective bargaining agreement

("CBA"), effective July 1, 2017, through June 30, 2023.[1] (Compl., ECF No. 1, ¶ 19; *see also*

Local 15/Mirmax CBA, ECF No. 12-2, Art. XVII.) Under the CBA, Defendant agreed to

make contributions to the Annuity, Welfare, and Apprenticeship, Skill Improvement

and Safety Funds, as well as the Central Pension Fund (collectively, "the Trust Funds"),

---

[1] The Court notes that Defendant became a signatory to the CBA as of November 16, 2017. (*See* Aff. of Lisa Madeiras ("Madeiras Aff."), ECF No. 11, ¶ 2.)

based on hours of work performed by Union employees. (Compl., ECF No. 1, ¶ 20; *see* Local 15/Mirmax CBA, ECF No. 12-2, Arts. X, XI.) Defendant also agreed to pay supplemental dues and political action committee payments to the Union, again, for each hour of work by Union employees. (Compl., ECF No. 1, ¶¶ 20–21; Local 15/Mirmax CBA, ECF No. 12-2, Arts. X, XI.)

## II. Procedural History

Plaintiffs initiated this action after an audit of Defendant's records revealed delinquencies in Defendant's contributions. (Compl., ECF No. 1, ¶ 23.) The audit, conducted in April 2022, showed that Defendant failed to provide contractually required contributions and supplemental payments for the period of November 16, 2017, to June 30, 2021. (*Id.* ¶ 24.)

As noted, Plaintiffs filed the Complaint on May 17, 2022. (*See id.*) The Clerk of Court issued summons, and Plaintiffs filed proof of service on June 6, 2022. (*See* Summons Issued, ECF No. 3; Proof of Service, ECF No. 5.) Plaintiffs then requested a certificate of default on June 24, 2022, after Defendant failed to respond to the Complaint. (*See* Req. for Certificate of Default, ECF No. 6.) The Clerk of Court issued a certificate of default on June 30, 2022, and Plaintiffs moved for default judgment that same day. (*See* Clerk's Entry of Default, ECF No. 7; Notice of Mot. for Default J., ECF No. 8.) The Honorable Frederic Block then referred the matter to the undersigned Magistrate Judge for a report and recommendation. (*See* June 30, 2022 ECF Order.)

On July 13, 2022, the Court scheduled a motion hearing for August 11, 2022. (*See* July 13, 2022 Scheduling Order.) The Court also directed the Clerk of Court to mail copies of its scheduling order, along with written notices of Plaintiffs' motion for default judgment, both to Defendant and Defendant's registered agent, Jose Mancayo, at the address on file with the New York Secretary of State. (*See id.*) The Court held the

3

hearing on August 11, 2022. (Aug. 11, 2022 ECF Minute Entry and Order.) Defendant

did not appear, and the Court took Plaintiffs' motion under advisement. (*See id.*)

## DISCUSSION

### I. Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a

default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The

plaintiff must first obtain an entry of default when a defendant "has failed to plead or

otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of

default is entered, and on the plaintiff's application, the district court may then enter a

default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b). A

"plaintiff is not entitled to a default judgment as a matter of right simply because a

party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y.

2013). Rather, the decision to grant a motion for default judgment is "left to the sound

discretion of [the] district court because it is in the best position to assess the individual

circumstances of a given case and to evaluate the credibility and good faith of the

parties."[2] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations

establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79,

84 (2d Cir. 2009). In making this determination, the "court is required to accept all of

---

[2] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having carefully reviewed the filings in this case, the Court finds that Plaintiffs' motion papers comport with these rules. Specifically, Plaintiffs (1) requested a certificate of default in accordance with Local Rule 55.1(a) (*see* Req. for Certificate of Default, ECF No. 6); (2) filed an affidavit demonstrating that Defendant has failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(b) (*see* Decl. of James Steinberg, ECF No. 6-1); and (3) certified the mailing of the motion papers to Defendant's last known business address, in accordance with Local Rule 55.2(c). (*See* Certificate of Service, ECF No. 14.)

4

the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, No. 18-CV-6476 (ARR), 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

## II. Analysis

### A. Entry of Default

In determining whether a defendant's conduct warrants entry of default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-

defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

      1. *Willfulness*

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *SEC v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998)). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g., United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. at 81.

Defendant's failure to respond or otherwise appear in this action supports a finding of willfulness. The Court notes that Plaintiffs adequately served Defendant by delivering the summons and complaint to the New York Secretary of State, as permitted by New York law. (*See* Proof of Service, ECF No. 5.) *See* N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(e)(1) & (h)(1); *see also Allstate Ins. v. New Century Pharmacy, Inc.*, No. 19-CV-5702 (ENV) (VMS), 2021 WL 7830141, at *2, 4 (E.D.N.Y. Aug. 13, 2021) (holding that professional services corporation was adequately served via the New York Secretary of State). Defendant failed to respond within twenty-one days of service. (*See* Proof of Service, ECF No. 5.) Defendant likewise failed to respond after Plaintiffs moved for

default judgment and after receiving notice of the motion both from Plaintiffs and the Clerk of Court. (*See* Certificate of Service, ECF No. 14; July 13, 2022 ECF Order; Notice to Defendant, ECF No. 15). In light of Defendant's failure to respond, despite receiving notice at least three times of this proceeding, the Court weighs this factor in favor of default.

2.  *Meritorious Defense*

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

3.  *Prejudice*

"The final factor the Court must consider is whether the non-defaulting part[y] would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendant's failure to respond to both Plaintiffs' and the Court's notices, "there is no indication that requiring Plaintiffs to take further steps . . . would be effective in eliciting a response from Defendants." *Mason Tenders*, 2003 WL 1960584,

at *3. The Court therefore finds that Plaintiffs would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiffs' motion, the Court recommends entering a default judgment.

**B. Liability**

Plaintiffs have also adequately alleged Defendant's liability in this matter. Specifically, Plaintiffs allege that Defendant (1) violated its obligations under the CBA by failing to make contributions to funds governed by ERISA, and (2) breached the CBA by failing to make supplemental dues and political action committee payments (non-ERISA covered contributions). (*See generally* Compl., ECF No. 1.) The Court addresses these claims in turn.

1. *ERISA Violations*

Plaintiffs allege that Defendant violated ERISA by failing to make required contributions to each of the Trust Funds. The Court finds that Plaintiffs' allegations sufficiently establish Defendant's liability on this claim.

Under Section 515 of ERISA,

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; *see also id.* § 1132(g)(2) (stating, *inter alia*, that if there is a judgment in favor of a "fiduciary for or on behalf of a plan" seeking to enforce § 1145, "the court shall award the plan . . . the unpaid contributions," as well as "interest on the unpaid contributions [and] liquidated damages" according to the "rate provided under the plan"). Relatedly, Section 301 of the LMRA provides a federal cause of action for "violation[s] of contracts between an employer and a labor organization representing

employees . . . or between any such labor organizations." 29 U.S.C. § 185(a). Where an employer fails to make required contributions, plan fiduciaries can bring a civil action to enforce the terms of the CBA. *See* 29 U.S.C. § 1132(a)(3).

Plaintiffs have adequately alleged their entitlement to such relief. As alleged in the Complaint, Defendant is an employer in an industry affecting commerce as defined by ERISA, and the Trust Funds are multiemployer plans governed by ERISA to which Defendant was obligated to contribute under the CBA.[3] (*See* Compl., ECF No. 1, ¶¶ 8, 12, 18, 21.) This action was brought by fiduciaries of the Trust Funds, i.e., their trustees and CEO. (*Id.* ¶¶ 5, 10.) *See LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (explaining the broad, functional definition of fiduciaries under ERISA). Moreover, Plaintiffs have alleged that Defendant failed to make required contributions during the relevant period: November 16, 2017, to June 30, 2021. (Compl., ECF No. 1, ¶ 29.) Given these unrebutted allegations in the Complaint, the Court finds that Plaintiffs have sufficiently alleged Defendant's liability as to the ERISA claim.[4]

---

[3] "An ERISA 'employer' is defined as 'any person acting directly as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan.'" *Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 285 (2d Cir. 2014) (quoting 29 U.S.C. § 1002(5).) "The term 'multiemployer plan' means a plan—(i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements as the Secretary [of Labor] may prescribe by regulation." 28 U.S.C. § 1002(37)(A).

[4] The Court notes that Plaintiffs' claims are timely. "In lieu of an ERISA-specific limitations period, courts normally apply the limitations period specified 'in the most nearly analogous state limitations statute,'" i.e., New York's six-year statute of limitations for contract actions. *Landry v. Metro. Life Ins. Co.*, No. 19-CV-3385 (KPF), 2021 WL 848455, at *7 (S.D.N.Y. Mar. 5, 2021) (quoting *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (per curiam) (citing N.Y. C.P.L.R. § 213)). The same statute of limitations applies to ordinary LMRA claims. *See O'Hare v. Gen. Marine Transp. Corp.*, 740 F.2d 160, 167–68 (2d Cir. 1984); *see also Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 338–41 (E.D.N.Y. 2009). Plaintiffs' claims fall well within the applicable six-year period.

2. *Breach of the CBA*

Plaintiffs allege that Defendant also breached the CBA by failing to pay supplemental union dues and political action committee payments. Here, too, the Court concludes that the Complaint adequately pleads Defendant's liability.

The LMRA authorizes suit in federal court "for violation[s] of contracts between an employer and a labor organization[5] representing employees." 29 U.S.C. § 185(a). Accordingly, where an employer violates the terms of a CBA, a "labor organization may sue . . . in behalf of the employees whom it represents." *Id.* § 185(b).

Plaintiffs have adequately alleged entitlement to relief under the LMRA. Per the allegations in the Complaint, the Union is a qualifying labor organization, the CBA is a contract between the Union and Defendant (an employer), and Defendant was bound by the CBA at all relevant times. (Compl., ECF No. 1, ¶¶ 13, 18–21.) The Complaint also alleges that, although Defendant was obligated under the CBA to pay "supplemental union dues and political action committee payments," Defendant failed to make required payments "for the period of November 16, 2017 through June 30, 2021." (Compl., ECF No. 1, ¶¶ 23–24.) Based on these allegations, the Court finds that Plaintiffs have adequately established Defendant's liability for breaching the CBA.

## III. Damages

Having found that Defendant's default constitutes an admission of liability with respect to each of Plaintiffs' claims and that entry of default is warranted, the Court now determines the appropriate damages. *See Cement & Concrete Workers Dist. Council*

---

[5] A "'labor organization' means any organization . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5).

*Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (explaining that although the allegations in a complaint related to liability are deemed admitted upon entry of a default judgment, a default "'is not considered an admission of damages'" (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158). "The court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011).

"Section 502 of ERISA sets forth the damages that are recoverable for an employer's failure to remit contributions as required by Section 515 of ERISA." *Finkel v. Colony Elec. Co., Inc.*, No. 10-CV-2240 (FB) (LB), 2010 WL 5665042, at *4–5 (E.D.N.Y. Nov. 8, 2010), *report and recommendation adopted*, 2011 WL 346738 (E.D.N.Y. Feb. 1, 2011). It provides as follows:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —
>
> (A)    the unpaid contributions,
>
> (B)    interest on the unpaid contributions,
>
> (C)    an amount equal to the greater of —
>
>> (i)  interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E)    such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). For LMRA claims, plaintiffs may only recover the damages provided for in the contract itself. *See Finkel*, 2010 WL 5665042, at *4.

Here, Plaintiffs assert that they are entitled to delinquent ERISA contributions and non-ERISA contributions, plus prejudgment interest and liquidated damages. Plaintiffs also request attorney's fees, costs, and auditor's fees. The Court recommends awarding damages as follows.

## A. Delinquent ERISA and Non-ERISA Contributions

The CBA requires Defendant to make contributions to the Trust Funds at rates corresponding to the covered employees' work shifts. (*See* Local 15/Mirmax CBA, ECF No. 12-2, Arts. X, XI.) These contributions were to be "paid through the purchase of stamps from the Fund Office of" the Trust Funds. (Chase Aff., ECF No. 10, ¶ 2; *see also* Local 15/Mirmax CBA, ECF No. 12-2, Art. XI § 4.) Employees would collect the stamps, then, once a year, "submit their stamp books to the Fund Office for redemption." (Chase Aff., ECF No. 10, ¶ 4.) "A record of the stamps redeemed by each employee is maintained by" the Trust Funds. (*Id.*)

Plaintiffs have submitted an affidavit from the payroll audit manager for the accounting firm that audited Defendant's payroll records in April 2022, as well as the report generated after the audit (the "Report"). (Aff. of Lisa Madeiras ("Madeiras Aff."), ECF No. 11, ¶ 1; Ex. G ("Report"), ECF No. 12-7; *see also* Compl., ECF No. 1, ¶¶ 23–24.) The Report indicates that a Union employee worked 280 hours of regular shifts between November 16, 2017, and December 31, 2017, and 840 hours of regular shifts between January 1, 2018 and June 30, 2018. (Report, ECF No. 12-7, at 3–4.) The Report also indicates that Defendant made no contributions to the Trust Funds in 2017 and that, in 2018, Defendant made contributions for only 664 hours of regular work shifts. (*Id.*)

Accordingly, Defendant owes contributions for 280 hours of regular work shifts for 2017 and 176 hours of regular work shifts for 2018.

As set forth in the CBA, Defendant was required to make contributions to each of the Trust Funds at rates corresponding with hours of work provided by Union employees. Based on the Report, the CBA, and the stamp rates provided by Plaintiffs, the Court finds that Defendant owes $8,618.40 in unpaid ERISA contributions, as detailed in the table below. (*See id.* at 3–4; Local 15/Mirmax CBA, ECF No. 12-2, Arts. X, XI; Ex. H ("Stamp Rates"), ECF No. 12-8.)

| ERISA Plan | 2017 Stamp Rate Per Hour | 2017 Unpaid Contributions = Stamp Rate x 280 hours | 2018 Stamp Rate Per Hour | 2018 Unpaid Contributions = Stamp Rate x 176 hours | Totals |
|---|---|---|---|---|---|
| Welfare Fund | $6.85 | $1,918.00 | $6.90 | $1,214.40 | $3,132.40 |
| Pension Fund | $5.15 | $1,442.00 | $5.15 | $906.40 | $2,348.40 |
| Annuity Fund | $4.75 | $1,330.00 | $4.75 | $836.00 | $2,166.00 |
| Apprentice Fund | $0.45 | $126.00 | $0.45 | $79.20 | $205.20 |
| Medical Reimbursement Fund | $0.50 | $140.00 | $0.45 | $79.20 | $219.20 |
| Vacation Fund | $1.20 | $336.00 | $1.20 | $211.20 | $547.20 |
| **Grand Total:** | | | | | $8,618.40 |

The Report also indicates that Defendant owes delinquent supplemental dues and political action committee payments. (*See* Report, ECF No. 12-7.) Like the ERISA-covered contributions, the CBA obligated Defendant to make these payments at rates per hour of work performed by Union employees. (*See* Local 15/Mirmax CBA, ECF No. 12-2, Art. X §§ 4, 6.) For both 2017 and 2018, Defendant was to pay $1.85 in

supplemental dues and $0.05 in political action committee payments per regular work hour. (*See* Stamp Rates, ECF No. 12-8.) Like the ERISA-covered contributions, Defendant failed to make any of these required payments during 2017 (corresponding to 280 hours of regular work), but paid 664 hours' worth in 2018, leaving 176 hours' worth of unpaid non-ERISA contributions. (*See* Report, ECF No. 12-7.) Consequently, the Court recommends awarding $843.60 in unpaid supplemental dues ($518.00 [$1.85 x 280 hours] + $325.60 [$1.85 x 176 hours] = $843.60) and $22.80 in political action committee payments ($14.00 [$0.05 x 280 hours] + $8.80 [$0.05 x 176 hours] = $22.80), for a total of $866.40 in unpaid non-ERISA contributions. ($843.60 + $22.80 = $866.40.)

## B. Prejudgment Interest

### 1. *ERISA Contributions*

ERISA states that "interest on unpaid contributions shall be determined by using the rate provided under the plan," if any. 29 U.S.C. § 1132(g)(2). In this case, the trust documents authorize Plaintiffs to collect interest on delinquent contributions "at the rate of six percent (6%) per annum" — except for funds owed to the Central Pension Fund, which accrue interest "at the rate of 9% simple interest."[6] (*See* Amend. to Agreement & Decl. of Trust for the Annuity Fund ("Annuity Fund Amend."), ECF No. 12-3, Art. V § 6, at ECF p. 22; Amend. to Agreement & Decl. of Trust for the Welfare Fund ("Welfare Fund Amend."), ECF No. 12-4, Art. VII § 8, at ECF p. 31; Amend. to the

---

[6] Although not specifically detailed in the Agreement and Declaration of Trust for the Central Pension Fund, Plaintiffs' calculation of interest on unpaid contributions to the Central Pension Fund appears to presume that it is to be accrued annually, like the other Trust Funds. (*See* Restated Agreement & Decl. of Trust of the CPF ("CPF Agreement"), ECF No. 12-6, Art. IV § 4.5(c).) The Court therefore calculates prejudgment interest for unpaid contributions to the Central Pension Fund at a 9% annual rate. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D v. Genrus Corp.*, No. 20-CV-4980 (MKB) (RER), 2021 WL 4755704, at *4 (E.D.N.Y. Aug. 16, 2021), *report and recommendation adopted*, No. 20-CV-4980 (MKB) (RER), 2021 WL 3928952 (E.D.N.Y. Sept. 2, 2021).

14

Agreement & Decl. of Trust for the Apprenticeship, Skill, Improvement & Safety Fund ("Apprenticeship Fund Amend."), ECF No. 12-5, Art. V § 6, at ECF p. 18; Restated Agreement & Decl. of Trust of the CPF ("CPF Agreement"), ECF No. 12-6, Art. IV § 4.5(c).) Neither Plaintiffs nor the trust documents specify the date on which interest is to accrue on delinquent contributions. Plaintiffs' submissions do suggest, however, that interest was calculated with respect to each calendar year, i.e., that interest accrued on December 31 of each year in which contributions were owed.

Specifically, Plaintiffs have used the following formula to calculate prejudgment interest with respect to the unpaid contributions owed, per year:

(number of days between the end of the year and date of calculation) x (applicable interest rate) / 365 x (principal contributions owed per year)

(Madeiras Aff., ECF No. 11, ¶ 6.) The Court recommends an award of prejudgment interest through the date of judgment, using this same formula. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs., Local 15, 15A, 15C & 15D ex rel. Callahan v. Carlo Lizza & Sons Paving, Inc.*, No. 19-CV-2461 (BMC) (LB), 2019 WL 5694053, at *5 (E.D.N.Y. Aug. 22, 2019) (using same formula); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs., Local 15, 15A, 15C & 15D ex rel. Callahan v. Barbella Env't Tech., Inc.*, No. 17-CV-4397 (CBA) (RLM), 2018 WL 4403393, at *5 (E.D.N.Y. Mar. 1, 2018) (same).

As of the date of this Report and Recommendation ("R&R") (December 2, 2022), the total interest for unpaid ERISA contributions is $2,667.54.[7] Plaintiffs are also entitled to prejudgment interest calculated from the date of this R&R through the date that the Clerk of Court enters final judgment at a per diem rate of $1.61.[8]

2.   *Non-ERISA Contributions*

Because the LMRA allows labor unions "to sue in federal court for breaches of state-law labor contracts, the rate under [New York C.P.L.R.] section 5004 is appropriate" when calculating prejudgment interest on non-ERISA contributions. *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs, Local 14-14B ex rel. Christian v. Superior Site Work, Inc.*, No. 15-CV-543 (MKB), 2017 WL 639248, at *8 (E.D.N.Y. Feb. 16, 2017) (citing 29 U.S.C. § 185(a)). Section 5004 sets forth a nine-percent annual interest rate, which, in this case, should be calculated "'from a midpoint date in the delinquency period.'" *Id.* at *9 (citing N.Y. C.P.L.R. §§ 5001, 5004) (quoting

---

[7] Interest is calculated as follows, with all ERISA contributions except for the Central Pension Fund contributions included in the "Non-CPF" category. The first number represents the number of days between the end of the calendar year during which the unpaid contributions accrued and the date of this R&R, December 2, 2022 (inclusive of the end date).

- 2017 Non-CPF Interest = 1,798 x .06/365 x $3,850.00 = $1,137.91
- 2017 CPF Interest = 1,798 x .09/365 x $1,442.00 = $639.30
- 2018 Non-CPF Interest = 1,433 x .06/365 x $2,420.00 = $570.06
- 2018 CPF Interest = 1,433 x .09/365 x $906.40= $320.27

[8] The daily prejudgment interest rate for delinquent contributions is determined by dividing the applicable interest rate by 365 and multiplying that rate by the unpaid contribution amount for a given year of delinquencies, as follows. For the unpaid Non-CPF contributions from 2017, the rate is $0.63 (.06/365 x $3,850.00). For 2018, the rate is $0.40 (.06/365 x $2,420.00). Accordingly, the daily prejudgment interest rate for Non-CPF contributions is $1.03 ($0.63 + $0.40). The daily interest rate for unpaid CPF contributions is calculated similarly, but at a rate of 9% per annum. *See supra* note 6. Accordingly, for 2017 contributions, the rate is $0.36 (.09/365 x $1,442.00). For 2018 contributions, the rate is $0.22 (.09/365 x $906.40). The total daily interest rate for CPF contributions is thus $0.58 ($0.36 + $0.22). Adding the non-CPF daily rate and the CPF daily rate equals $1.61 ($1.03 + $0.58).

*Alston v. Northstar La Guardia LLC*, No. 10-CV-3611 (LAK) (GWG), 2010 WL 3432307, at *3 (S.D.N.Y. Sept. 3, 2010)).

Here, Defendant was delinquent in its contributions from November 16, 2017, to June 30, 2018. (*See* Report, ECF No. 12-7, at 3–4.) The midpoint between those dates is approximately March 10, 2018. The Court therefore recommends an award of $369.37 in total interest owed on the unpaid non-ERISA contributions.[9] The Court further recommends an award of interest calculated from December 2, 2022, through the date that the Clerk of Court enters final judgment at a per diem rate of $0.21.[10]

## C. Liquidated Damages

Plaintiffs also request liquidated damages, as permitted under ERISA. *See* 29 U.S.C. § 1132(g)(2)(C)(ii). ERISA permits an award of liquidated damages "'in an amount not in excess of 20 percent'" of the unpaid contributions "as of the day the action was filed." *Trs. of Pavers & Road Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atlantic Steel Sols., LLC*, No. 21-CV-2518 (CBA) (JRC), 2022 WL 4642735, at *7 (E.D.N.Y. Sept. 15, 2022) (quoting 29 U.S.C. § 1132(g)(2)(C)(ii)), *report and recommendation adopted*, No. 21-CV-2518 (CBA) (JRC), 2022 WL 4662723 (E.D.N.Y. Sept. 30, 2022).

The Court notes that the trust documents entitle Plaintiffs to liquidated damages equal to 10% of the delinquent ERISA contributions — again, with the exception of the

---

[9] The interest on the Non-ERISA contributions is calculated from the date of accrual (the reasonable midpoint date of March 10, 2018) through the date of this R&R as follows, with the first number representing the number of days between the end of the calendar year during which the unpaid contributions accrued and the date of this R&R, December 2, 2022 (inclusive of the end date), at a rate of 9% interest: 1,729 x .09/365 x $866.40 = $369.37.

[10] The daily interest rate for Non-ERISA contributions is calculated based on the total outstanding delinquent Non-ERISA contributions and at a 9% rate, as follows: .09/365 x $866.40 = $0.21.

Central Pension Fund, which entitles Plaintiffs to 20%. (*See* Annuity Fund Amend., ECF No. 12-3, Art. V § 6, at ECF p. 22; Welfare Fund Amend., ECF No. 12-4, Art. VII § 8, at ECF p. 31; Apprenticeship Fund Amend., ECF No. 12-5, Art. V § 6, at ECF p. 18; CPF Agreement, ECF No. 12-6, Art. IV § 4.5(b).) This remedy is well within the liquidated damages allowed under ERISA. *See* 29 U.S.C. § 1132(g)(2)(C)(ii). The Court accordingly finds that Plaintiffs have established their entitlement to liquidated damages on Defendant's unpaid ERISA contributions in the amount of $1,096.68. ($627.00 [$6,270.00 x .1] + $469.68 [$2,348.40 x .2] = $1096.68) (*See* Mem. in Supp. of Default J., ECF No. 13, at 9.) *See Gesualdi v. Burtis Constr. Co.*, No. 20-CV-4864 (ARR) (ARL), 2021 WL 6550952, at *4 (E.D.N.Y. Dec. 28, 2021), *report and recommendation adopted*, No. 20-CV-4864 (ARR) (ARL), 2022 WL 173548 (E.D.N.Y. Jan. 19, 2022); *Trs. of Bldg. Trades Educ. Benefit Fund v. Laura Elec. Lighting & Maint. Serv. Inc.*, No. 20-CV-3700 (DRH) (JMW), 2021 WL 6294391, at *4 (E.D.N.Y. Dec. 14, 2021), *report and recommendation adopted*, No. 20-CV-3700 (DRH) (JMW), 2022 WL 59655 (E.D.N.Y. Jan. 6, 2022); *Trs. of Bldg. Trades Educ. Benefit Fund v. Culver Elec., LLC*, No. 17-CV-3448 (DRH) (SLT), 2021 WL 1911122, at *4 (E.D.N.Y. Apr. 19, 2021), *report and recommendation adopted*, No. 17-CV-3448 (DRH) (SLT), 2021 WL 1906486 (E.D.N.Y. May 12, 2021).

### D.  Other Awards

#### 1.  *Attorney's Fees*

Although ERISA mandates the recovery of attorney's fees in any successful action to recover delinquent contributions, courts have broad discretion in determining what constitutes a reasonable attorney's fee. *See* 29 U.S.C. § 1132(g)(2)(D); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). In this Circuit, a reasonable attorney's fee is based on a number of factors, including the labor and skill required, the difficulty of the issues, the attorney's

customary hourly rate, awards given in similar cases, and the experience, reputation, and ability of the attorney. *See Arbor Hill*, 522 F.3d at 186 n.3, 190. Further, under the "forum rule," courts typically assess an attorney's requested hourly rate by comparison to other rates awarded in the district in which the reviewing court sits. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009).

Once a court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190; *see also Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'"). With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983); *see also Finkel*, 970 F. Supp. 2d at 127.

In this case, Plaintiffs seek $2,357.50 in attorney's fees for 5.75 hours, billed at a rate of $410.00 per hour. (*See* Billing Records, attached as Ex. J to Steinberg Aff., ECF No. 12-10; Mem. in Supp. of Default J., ECF No. 13, at 11.) Reasonable hourly rates in this district range "from $300 to $450 per hour for partners . . . and $70 to $100 per hour for paralegals." *Ret. Fund of Loc. 1482 Paint & Allied Prod. Mfrs. v. N. Adhesives, Inc.*, No. 19-CV-5609 (MKB) (RER), 2020 WL 6370060, at *4 (E.D.N.Y. May 27, 2020), *report and recommendation adopted*, No. 19-CV-5609 (MKB) (RER), 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020); *see also Trs. of Pavers & Road Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp.*, No. 19-CV-2312 (ARR) (PK), 2020 WL 1668041, at *8 (E.D.N.Y. Mar. 5, 2020), *report and recommendation adopted*, No. 19-CV-2312 (ARR) (PK), 2020 WL 1666461 (E.D.N.Y. Apr. 3,

2020); *Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(K) Savings Plan v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2018 WL 8452493, at *7 (E.D.N.Y. Dec. 28, 2018), *report and recommendation adopted*, No. 18-CV-2596 (AMD) (LB), 2019 WL 2301613 (E.D.N.Y. May 30, 2019).

Here, the attorney, Mr. Steinberg, is a partner with over 27 years of experience and expertise in labor cases; he requests $410 per hour. (*See* Steinberg Aff., ECF No. 12, ¶¶ 1, 11.) *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D v. Genrus Corp.*, No. 20-CV-4980 (MKB) (RER), 2021 WL 4755704, at *5 (E.D.N.Y. Aug. 16, 2021) (awarding same attorney $390 per hour for 6.5 hours of work). The Court finds that Plaintiffs' counsel's requested hourly rate of $410.00 is reasonable. The number of hours billed, 5.75, based on the billing records and scope of work performed by counsel, is also reasonable. (*See* Billing Records, attached as Ex. J to Steinberg Aff., ECF No. 12-10; Mem. in Supp. of Default J., ECF No. 13, at 9–12.) Accordingly, the Court recommends an award of $2,357.50 in attorney's fees.

2. *Costs*

"When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients." *N. Adhesives, Inc.*, 2020 WL 6370060, at *5 (citing *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 628 (E.D.N.Y. 2017)). Plaintiffs request $522.00 in costs related to this action, comprising a $402.00 filing fee and an additional $120.00 for service of process. (*See* Mem. in Supp. of Default J., ECF No. 13, at 12; Ex. I to Aff. in Supp. of Mot. for Default J., ECF No. 12-9 (detailing fee for service of process).) The Court finds these

costs to be documented and reasonable and, consequently, recommends awarding $522.00 in costs.

    3. *Auditor's Fee*

Plaintiffs also request "an award of $2,915.85 in audit fees incurred as a result of the field audit conducted" in April 2022. (Mem. in Supp. of Default J., ECF No. 13, at 11; Audit Costs, Ex. A to Madeiras Aff., ECF No. 11-1.) Courts routinely award such fees as a form of "other legal or equitable relief" available under ERISA. 29 U.S.C. § 1132(g)(2)(E); *see King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 172 (E.D.N.Y. 2004). The Court also notes that the trust documents provide that delinquent employers shall be responsible for auditor's fees. (*See* Annuity Fund Amend., ECF No. 12-3, Art. V § 6, at ECF p. 22; Welfare Fund Amend., ECF No. 12-4, Art. VII § 8, at ECF p. 31; Apprenticeship Fund Amend., ECF No. 12-5, Art. V § 6, at ECF p. 18; CPF Agreement, ECF No. 12-6, Art. IV § 4.5(e).) Accordingly, the Court recommends an award of $2,915.85 for Plaintiffs' audit fees.

### E. Post-Judgment Interest

Although Plaintiffs here did not specifically request post-judgment interest, the Second Circuit has held that an award of post-judgment interest at the statutory rate prescribed by 28 U.S.C. § 1961(a) is "mandatory." *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004). Section 1961(a) provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). "Moreover, post-judgment interest 'shall be computed daily [from the date of judgment] to the date of payment.'" *Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(K) Savings Plan v. Temperini Mech. Inc.*, No. 18-CV-

2596 (AMD) (LB), 2020 WL 571680, at *3 (E.D.N.Y. Jan. 13, 2020) (alteration in original)

(quoting 28 U.S.C. § 1961(b)), *report and recommendation adopted*, No. 18-CV-2596 (AMD)

(LB), 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020). Accordingly, the Court respectfully

recommends that post-judgment interest be awarded at the rate set forth in 28 U.S.C.

§ 1961 on all sums awarded from the date judgment is entered to the date of payment.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff's

motion for default judgment be granted. Plaintiffs should be awarded damages as

follows: $9,484.80 for unpaid ERISA and non-ERISA contributions ($8,618.40 + $866.40

= $9,484.80); $2,667.54 in prejudgment interest on unpaid ERISA contributions; $369.37

in prejudgment interest on unpaid non-ERISA contributions; $1,096.68 in liquidated

damages; $2,357.50 in attorney's fees; $522.00 in costs; and $2,915.85 for auditor's fees,

for a total of **$19,413.74**. Prejudgment interest should also be awarded at a daily rate of

**$1.82** from December 2, 2022, the date of this Report and Recommendation, through the

date the Clerk of Court enters final judgment. Finally, Plaintiffs should be awarded

post-judgment interest at the rate set forth in 28 U.S.C. § 1961 on the total sum awarded

on the date of judgment, accruing through the date of payment.

Plaintiffs are directed to serve a copy of this Report and Recommendation on

Defendant by **December 5, 2022**, and to file proof of service with the Court.

\*   \*   \*   \*   \*

This Report and Recommendation will be filed electronically and sent by mail to

Defendant Mirmax Engineering, P.C. Objections to this Report and Recommendation

must be filed, with a courtesy copy sent to the Honorable Frederic Block, at 225 Cadman

Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file

objections within the specified time waives the right to appeal before both the district

court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated:  Brooklyn, New York
        December 2, 2022

_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE